**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THOMAS J. JONES,<br>　　　　Plaintiff,<br><br>　　v.<br><br>CORRECTIONS OFFICER M. SWAIN,<br>CORRECTIONS OFFICER R. HICKS,<br>SERGEANT DAVIS and MICHAEL MURPHY,<br>　　　　Defendants. | Civil Action No. 03-5850 (FLW)<br><br>OPINION |

**WOLFSON**, District Judge

　　This matter comes before the Court on separate Motions for Summary Judgment filed by Michael Murphy, the former Health Services Administrator at the Camden County Correctional Facility ("CCCF"), and Corrections Officer M. Swain, Corrections Officer R. Hicks and Sergeant Davis ("CCCF Defendants"). Plaintiff's Complaint alleges civil rights violations pursuant to 42 U.S.C. § 1983. This Court has jurisdiction pursuant to 28 U.S.C. §1331. For the reasons discussed herein, the Court grants both Motions for Summary Judgment.[1]

---

[1] The Court notified Plaintiff by letter dated April 28, 2005, that opposition to Defendant Murphy's Motion had been due on April 1, 2005, and that opposition to the Motion of CCCF Defendants had been due on April 22, 2005. The April 28, 2005 letter further informed Plaintiff that the Court would consider these Motions unopposed because Plaintiff failed to respond to them. The Court received no correspondence from Plaintiff in response to that letter. As such, the Court is considering Defendants' Motions unopposed. Because of the required liberal construction of *pro se* pleadings, the Court will consider Plaintiff's Pretrial Memorandum filed on March 9, 2005, as the most recent statement of his claims.

1

I.      BACKGROUND

Plaintiff's allegations arise out of an altercation with CCCF Corrections Officers on September 22, 2003, and his medical treatment at CCCF following that incident.  Plaintiff, a former pretrial detainee at CCCF, alleges that on that date, Defendant Swain insisted that Plaintiff eat from a breakfast tray that bore another person's name.  Compl. at 6; Plaintiff's Pretrial Memorandum ("Pl. Pretrial Mem.") at 1.  When Swain opened the door to his cell, Plaintiff stepped out to show him that the tray given to him was not his tray, and refused to get back in his cell when Swain ordered that he do so.  Compl. at 6.   After Plaintiff requested that Swain call the Sergeant, Swain allegedly tried to grab Plaintiff, then aimed his mace at Plaintiff's face.  Id.  Plaintiff then ran from Swain, and hit Swain with the breakfast tray as he was running from him.  Id.

Plaintiff ran through a gate to the sally port, locking the gate behind him as he passed through.  Once in the sally port, Defendant Hicks threw Plaintiff to the ground and held him there until someone opened the door for Swain in response to Swain's request to "let me get him."  Id. Sergeant Davis observed Hicks holding Plaintiff down and handing him over to Swain.  Id.  Once Swain had control of Plaintiff, he allegedly bumped him up against the walls of the hallway and a steel corner off a doorway while escorting him down the hall.  Id.  The incident left Plaintiff unconscious, and with a cut above his eye that required stitches.  Id.

Plaintiff alleges that once he awoke, Swain escorted him to Sergeant Davis' office.  Id. Sergeant Davis then escorted Plaintiff to the CCCF medical area, where he was cleaned up and sent to Our Lady of Lourdes Medical Center for treatment.  Id.  There, Plaintiff received stitches on his eye.  Id.  After returning from the emergency room at Our Lady of Lourdes, Plaintiff was

kept in the medical area at CCCF for "several days," where he was treated with antibiotics and analgesics.  Affidavit of Michael Murphy, R.N. ("Murphy Aff.") ¶ 5.  Plaintiff was then transferred to solitary confinement for 30 days based on the incident with Swain.  Compl. at 7.

Plaintiff asserts that despite repeated requests to the medical department, the medical Director, and medical runners who pass medicine to inmates, he was not taken out of solitary confinement to have his stitches removed.  Compl. at 7; Dep. Of Thomas J. Jones, Exh. A to Murphy Motion for Summary Judgment at 71:1-73:15.  Plaintiff's medical chart reflects that a nurse was directed to remove his sutures on September 28, 2003.  Murphy Aff. ¶ 6.  Plaintiff's chart further notes that he refused treatment.  Id.  The chart does not reflect that Plaintiff made any further complaints about the wound or that he sought any additional treatment.  Id. ¶¶ 7-8.  Murphy never met, saw or treated Plaintiff during the time he was the Health Services Administrator at CCCF, and received no grievance forms relating to Plaintiff's medical care or treatment.  Murphy Aff. ¶¶ 3-4.

Plaintiff contends that as a result of the September 22, 2003 incident, he sustained injuries including head trauma, eye laceration, eye swelling, facial muscle damage, twisted right knee ligaments, post traumatic emotional distress, temporary double vision, neck pains, and serious headaches.  Compl. at 11.

## II.     PROCEDURAL HISTORY

Plaintiff filed the instant Complaint on December 10, 2003, naming as Defendants Warden David Owens, CCCF Medical Department, Camden County Department of Corrections, Deputy Warden Berry and Scibel Associates as Defendants, in addition to Swain, Hicks, Davis and Murphy.  By Order dated May 27, 2004, the Court *sua sponte* dismissed Defendants Warden

Owens, CCCF Medical Department, Camden County Department of Corrections, Deputy Warden Berry and Scibel Associates.  See Jones v. Owens, et al., No. 03-5850 (D.N.J. May 27, 2004).  Plaintiff's remaining claims are that Swain and Hicks used excessive force against him; that Hicks and Davis failed to intervene and protect him from Swain; and that Murphy failed to provide him with adequate medical treatment.

### III.   DISCUSSION

#### A.   Summary Judgment Standard

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  To show that a genuine issue of material fact exists, the nonmoving party may not rest upon mere allegations, but must present actual evidence in support thereof.  Id. at 249 (citing First Nat'l Bank of Arizona v. Cities Svc. Co., 391 U.S. 253, 290 (1968)).  In evaluating the evidence, the Court must "'view the inferences to be drawn from the underlying facts in the light most favorable to the [nonmoving] party.'"  Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (quoting Bartnicki v. Vopper, 200 F.3d 109, 114 (3d Cir. 1999)).

The pleadings of *pro se* plaintiffs are to be construed liberally.  Alston v. Parker, 363 F.3d 229, 234 (3d Cir. 2004) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)).  Thus, the Court will "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name."  Dluhos, 321 F.3d at 369 (3d Cir. 2003) (citing Higgins v. Beyer, 293

F.3d 683, 688 (3d Cir. 2002)).[2]  However, even though *pro se* pleadings are entitled to liberal construction, the Plaintiff must still set forth facts sufficient to survive summary judgment. Kaiser v. Bailey, 2003 WL 21500339 at * 3 (D.N.J. July 1, 2003).

**B.      Exhaustion of Administrative Remedies**

Murphy and the CCCF Defendants argue that Plaintiff's claims must be dismissed because he did not exhaust all available administrative remedies prior to filing a civil complaint, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other Federal law, by a prisoner, confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

A prisoner is required to exhaust all available administrative remedies prior to filing a complaint, even if the administrative process does not provide for the type of relief Plaintiff, desires, such as money damages.  Porter v. Nussle, 534 U.S. 516, 524 (2002); Lodato v. Ortiz, 314 F. Supp. 2d 379, 384-85 (D.N.J. 2004) (citations omitted).  The exhaustion requirement applies to a grievance procedure in an inmate handbook that is not formally adopted by a state administrative agency.  Concepcion v. Morton, 306 F.3d 1347, 1348-1349 (3d Cir. 2002).  The PLRA, and its exhaustion requirement, applies with equal force to pretrial detainees.  See 42 U.S.C. § 1997e(h) (defining "prisoner" as "any person incarcerated or detained in any facility

---

[2] The Court notes that in his Pretrial Memorandum, Plaintiff suggests for the first time that he "wishes to bring about state tort claim [sic] of negligence and excessive force, and prison official brutality." Plaintiff's Pretrial Memorandum at 8.  Although the Court is bound to apply the relevant law, regardless of whether the Plaintiff has mentioned it by name, it is not required to permit Plaintiff to amend his Complaint through the Pretrial Memorandum to assert state tort claims, particularly because these claims mirror his constitutional claims of excessive force and failure to intervene.

who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program"). Defendants argue that Plaintiff has not complied with the PLRA's exhaustion requirement because CCCF had administrative procedures available to all inmates throughout Plaintiff's period of incarceration. Each inmate receives a copy of an inmate handbook detailing the required administrative procedures upon intake. Murphy Brief at Exh. C; CCCF Brief at Exh. B.

Plaintiff asserts in his Pretrial Memorandum that he filed grievances pertaining to the incidents of September 22, 2003, and the failure of CCCF medical personnel to remove his stitches in five days, as directed. Pl. Pretrial Mem. at 4-5. Plaintiff also testified in his deposition that he filed multiple grievances with Murphy about the medical personnel's failure to remove his stitches. Deposition of Thomas J. Jones, at 71:1-73:15, attached as Exh. A to Murphy's Motion for Summary Judgment.

Neither Motion provides the Court with a factual basis upon which the Court can grant summary judgment for Plaintiff's failure to exhaust administrative remedies. Both Murphy and the CCCF Defendants have failed to submit sworn statements from *any* prison employee indicating that each inmate receives a copy of the handbook. Moreover, both sets of the Defendants have submitted a copy of the Inmate Handbook that was "Revised April 28, 2004." The Court therefore has no basis for determining that Jones did in fact receive a copy of an Inmate Handbook in 2003, or at any other time, or what the Inmate Handbook stated at the time Plaintiff was a resident at CCCF. Additionally, although Defendant Murphy has submitted an affidavit in this action indicating that he received no grievance forms from Mr. Jones relating to

medical care or treatment, Murphy Aff. at ¶ 4, the CCCF Defendants have failed to submit a sworn statement from the appropriate personnel at CCCF to indicate that Plaintiff never filed any grievances with regard to his claims of excessive force. As such, the Court cannot grant Defendants' Motions for Summary Judgment based upon Plaintiff's failure to exhaust administrative remedies, and thus turns to the merits of Plaintiff's constitutional claims.

      **B.**     **Excessive Force**

Plaintiff was a pretrial detainee at the time of the September 22, 2003 incident that forms the basis of his Complaint. Plaintiff's claim that Officers Swain and Hicks[3] used excessive force against him is therefore considered under the Due Process Clause of the Fourteenth Amendments for which 42 U.S.C. § 1983 provides a remedy.[4]  Fuentes v. Wagner, 206 F.3d 335, 341-2 (3d Cir. 2000)

---

    [3]It is unclear whether Plaintiff is alleging that Hicks used excessive force. The Complaint form completed by Plaintiff, which requires that Plaintiff state in detail "the negligence or wrongful acts of the public entity and public employees which caused damages," alleges solely that Hicks was negligent in "voluntarily grabbing my neck overturning my subdued self over to a furious officer to retaliate against me." Compl. at 9. However, in liberally construing Plaintiff's complaint, the Court will interpret Plaintiff's allegation that Hicks "threw me to the ground" to subdue him as a claim of excessive force.

    [4]To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United Sates committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

(citing Bell v. Wolfish, 441 U.S. 520 (1979)).  Under the Fourteenth Amendment, "the proper inquiry is whether [the conditions or restrictions of pretrial detention] amount to punishment of the detainee."  Bell, 441 U.S. at 535.  However, the Third Circuit has held that "the Eighth Amendment cruel and unusual punishments standards found in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992), apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance," as opposed to the standards set forth in Bell, which are more appropriately applied to claims of improper conditions or restrictions.  Fuentes, 206 F.3d at 347 (internal citations omitted).  The Circuit reasoned that there are no logical or practical distinctions between a prison disturbance involving pretrial detainees, convicted but unsentenced inmates, and sentenced inmates.  Id. at 347-48.

To determine whether a correctional officer has used excessive force in violation of Eighth Amendment standards, courts look to several factors including: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them"; and (5) "any efforts made to temper the severity of the response."  Id. (quoting Whitley, 475 U.S. at 321).

In Hudson, the Supreme Court distilled these factors into a two-part test, containing subjective and objective components, which a plaintiff must satisfy in order to establish an excessive force claim.  First, a plaintiff must establish that the defendants acted with a "sufficiently culpable state of mind."  Hudson, 503 U.S. at 8 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Culpability turns on a subjective determination of "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Brooks v. Kyler,

204 F.3d 102, 106 (3d Cir. 2000) (quoting Hudson, 503 U.S. at 7 (1992)).  Summary judgment in favor of a defendant is not appropriate if "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." Id., quoting Whitley, 475 U.S. at 322.  Plaintiff must then establish that the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation.  Hudson, 503 U.S. at 8. Excluded from constitutional recognition are "*de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Id. at 9 (quoting Whitley, 475 U.S. at 327) (internal quotation omitted).

      The subjective portion of the excessive force inquiry requires an evaluation of the circumstances presented to prison officials, who "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321-22).   Courts are to exercise "the appropriate hesitancy to critique in hindsight decisions necessarily made in haste, under pressure, and frequently without the luxury of a second chance."  Whitley, 475 U.S. at 320.

      Plaintiff has failed to set forth facts to survive summary judgment on his excessive force claim.  Plaintiff alleges that at the time that he was turned over to Swain, he had "voluntarily surrendered while standing in the sally port area" and already had been subdued.  Plaintiff's Pretrial Memorandum at 3.  However, no evidence has been presented to the Court indicating that Swain was acting in a manner other than to preserve internal order and discipline when Swain was escorting Jones down the hall after he had been held down by Hicks.  Jones concedes in his pleadings that in the short period of time preceding the incident, he refused Swain's order to return to his cell; threw

9

his tray at Swain; and attempted to run away and improperly lock Swain out of the sally port. The Court is not in possession of any evidence indicating that Plaintiff was already fully restrained and not resisting Swain as he escorted Plaintiff down the hall; Plaintiff may not rely solely upon his allegations in order to avoid summary judgment. The Court therefore finds that summary judgment is appropriate, as Plaintiff has failed to set forth facts to support a "reliable inference of wantonness in the infliction of pain."

Moreover, in objectively assessing Plaintiff's injuries, Plaintiff has failed to set forth facts indicating that Swain's use of force was greater than *de minimis*, or was of a sort "repugnant to the conscience of mankind," as is necessary to demonstrate a constitutional violation. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9 (citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). A plaintiff's *de minimis* injuries do not alone refute a plaintiff's excessive force claim; however, "the degree of [plaintiff's] resulting injury [can be] highly relevant to the determination of the unreasonableness of the force used." Thomas v. Ferguson, 361 F. Supp. 2d 435, 438 (D.N.J. 2004) (quoting Brooks, 204 F.3d at 108).

Here, Plaintiff alleges that he suffered a concussion and a cut above his eye requiring stitches. The Court concludes that the force applied in this instance was *de minimis*.[5] See, e.g., id. at 442 (allegation that corrections officers' actions resulted in Plaintiff sustaining a cut and swelling on his right cheek bone, a small laceration on the bridge of his nose, and cuts and swelling around his eyes found to be *de minimis*); Smith v. Hulick, 1998 WL 84019, at *3 (E.D.Pa. Feb.25, 1998) (finding

---

[5]As noted, Plaintiff's Complaint also alleges head trauma, eye laceration, eye swelling, facial muscle damage, twisted right knee ligaments, post traumatic emotional distress, temporary double vision, neck pains, and serious headaches. Compl. at 11. However, Plaintiff has failed to submit any evidence of these additional injuries.

10

that prisoner's injuries, including abrasions to his eye and elbow, a cut inside his mouth, bloody lip, and sore shoulder, were *de minimis*); Colon v. Wert, 1997 WL 137172, at *1-*3 (E.D.Pa. Mar. 21, 1997) (allegation that corrections officer slammed a cell door into the prisoner's chest, aggravating a pre-existing back and neck injury, found *de minimis*). In addition, Plaintiff has not set forth any facts indicating that, although his injuries were *de minimis*, Swain's behavior was of the malicious and sadistic character to offend contemporary standards of decency, and thus constitute a constitutional violation. Compare Hudson, 503 U.S. at 4 (holding that a demonstration of greater than minor injury was not required where Plaintiff testified that after he was placed in handcuffs and shackles, one corrections officer punched him in the mouth, eyes, chest, and stomach; the other Officer held the inmate in place and punched him from behind; and the supervisor watched the beating and told the officers "not to have too much fun.")

With respect to Hicks, Plaintiff has similarly failed to set forth facts demonstrating that his actions were wanton, or that his actions offended contemporary standards of decency or caused greater than *de minimis* injury. Rather, Plaintiff's claims suggest that Hicks was appropriately subduing him, as the first officer to reach Plaintiff when he was attempting to escape from Swain. The Court thus finds that Plaintiff has failed to come forward with evidence to survive summary judgment on his excessive force claims against Hicks and Swain.

    **C.**    **Duty to Intervene**

Plaintiff also claims that Davis and Hicks were negligent in turning him over to Swain to allegedly "retaliate" against him and to protect him from Swain's alleged use of excessive force. Compl. at 8, ¶¶ 2, 3. "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law

11

enforcement officers in their presence." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). A corrections officer who fails to intervene can be liable for an Eighth Amendment violation under § 1983 if he had a reasonable opportunity to intervene in a beating and refused to do so. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). However, an officer is only liable if there is a "realistic and reasonable opportunity to intervene." Id. There is no evidence in the record that Davis and Hicks actually observed Swain injuring Plaintiff, and failed to intervene.[6] The Court therefore grants summary judgment to Swain and Hicks on Plaintiff's claim that they failed to intervene and prevent the use of excessive force by Swain.

---

[6]Although not discussed by the Third Circuit in Smith, other Circuits have held that a police officer who fails to intervene is liable for the preventable harm caused by the actions of other officers where the officer observes *or has reason to know* that excessive force would be used. See, e.g., Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997); Anderson, 17 F.3d at 557. Here, the record is also devoid of evidence demonstrating that Davis and Hicks had reason to know that Swain would allegedly use excessive force in his handling of Plaintiff when escorting him down the hall. Swain's actions prior to Plaintiff's restraint in the sally port would not necessarily lead Davis and Hicks to conclude that Swain would use excessive force once they handed Plaintiff back over to him. Swain was simply performing his job in chasing after Plaintiff after he ran out of his cell and attempting to detain him. There is no basis for concluding that the chase, and Swain's alleged request to "let me get him" indicated to Davis and Hicks that he would do anything other than escort Plaintiff back to his cell.

### D.     Adequacy of Medical Care

The Court construes Plaintiff's claims against Murphy for failure to promptly remove his stitches as being brought against Murphy in his individual capacity.[7]  Murphy "never met, saw or treated the plaintiff in this suit, Thomas Jones, during the time [he] was the administrator."  Murphy Aff. at ¶ 3.

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence.  Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff has not set forth facts demonstrating Murphy's personal involvement in or any actual knowledge of any unconstitutional act.  Indeed, Plaintiff stated during his deposition that Michael Murphy was named in this lawsuit because he "was told that he was the director and the head of the medical department there at CCCF."  Plaintiff's claim that Murphy failed to "provide me adequate

---

[7] In the Court's May 27, 2004 Order dismissing Plaintiff's claims against, *inter alia,* the Camden County Correctional Facility Medical Department, the Court determined that Plaintiff's Complaint would not support a claim against Murphy in his official capacity.  A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent."  Monell v. New York City Dept. of Social Svcs., 436 U.S. 658, 690 n.55 (1978).  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law."  Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).  In its May 24 Order, the Court held that "Plaintiff does not refer to any policy or custom of Camden County and the facts set forth in the Complaint do not support an inference that the alleged use of excessive force was the result of the execution of an official policy or longstanding custom."  See Jones v. Owens, et al., No. 03-5850 (D.N.J. May 27, 2004).  Thus, a claim against Murphy in his official capacity did not survive the May 27, 2004 Order.

medical attention," Compl. at 9, is therefore in the nature of *respondeat superior*, which does not give rise to liability under § 1983.

## V.     CONCLUSION

For the reasons stated above, the Court will grant the Motions for Summary Judgment of the CCCF Defendants and Defendant Murphy.  An appropriate Order will follow.

/s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge
